It appeared in evidence on the trial that one Clackson, who resided in the State of Virginia, upon the marriage of his daughter with one Abraham Taylor, in the year 1814, put a negro woman named Amelia and her children into the possession of his son-in-law Taylor, who remained in possession of them, treating them as his own, until his death. That Clackson died in 1817, leaving a will, of which Abraham Taylor, after the renunciation of the executors therein named, was appointed administrator. That by said will the testator gave the negro woman Amelia and her children to Abraham Taylor and his wife for life, with remainder to his, the testator's, heirs. That Abraham Taylor died in 1819 intestate, and in 1823 Skelton Taylor was appointed his administrator. That in 1831 Skelton Taylor died and the plaintiffs (274) qualified as his executors. That in 1836 Elizabeth Taylor, the widow of Abraham Taylor, sold five negroes, being part of those descended from the woman Amelia, to the defendants, who were negro traders, and who immediately after their purchase, and in the night time, run the negroes out of the State of Virginia, where all the above *Page 218 
transactions took place. It was also in evidence that from the death of Abraham Taylor his widow remained in possession of Amelia and her children until the sale of a part of them to the defendants. That Abraham Taylor and his wife had no children, and that Skelton Taylor, the testator of the plaintiffs, was the father of Abraham, and, according to the laws of Virginia, was the person entitled to his, Abraham's, negroes, as next of kin, his widow being entitled to one-half of them during her life. It also appeared that the defendants had notice before their purchase that the representatives of Clackson claimed the negroes under his will, subject to the life estate of Mrs. Taylor, and that they were also claimed by the executors of Skelton Taylor. A demand and refusal before suit was also shown.
The counsel for the plaintiffs read to the court the law of Virginia as to distribution of intestates' estates, and also the law of that State imposing a forfeiture of an estate for life in negroes when the tenant for life attempted to sell or otherwise run them out of the State.
His Honor charged the jury "that to enable the plaintiffs to recover they must prove that the negroes belonged to them; that if the evidence satisfied the jury that Clackson had made an absolute gift of the negroes to Abraham Taylor, and that after his death, the negroes were allotted to his widow for life as her share under the Virginia statute of distribution, and that while she thus held them for life, she made the sale to the defendants with a view, or having reason to believe, that the defendants would run them out of the State, then under the law of Virginia the life estate was forfeited, and the plaintiffs were entitled to recover. That whether there was an absolute gift to Abraham Taylor or merely a loan as the defendants contended, was a question for their decision. (275) That a parol gift in Virginia was valid, and that by the law of Virginia, negroes being put into the possession of a son-in-law was prima facie a gift and not a loan, but that the presumption might be rebutted, and if the evidence satisfied them that it was a loan the plaintiffs were not entitled to recover; that whether the negroes were allotted to the widow as her dower right, as it was termed, after the death of Abraham Taylor, was also a question for them to decide; that if there were not such an allotment, then there was no forfeiture, and the plaintiffs were not entitled to recover, although there had been an absolute gift to Abraham Taylor."
The plaintiffs' counsel then moved the court to instruct the jury that if there were an absolute gift to Abraham Taylor, but no allotment to his widow as her dower right after his death, and in point of fact the negroes were suffered by the administrator of Abraham to remain in the possession of the widow, subject to an allotment and division whenever he thought proper to make one, then a sale while she thus held them would *Page 219 
be a forfeiture of her right to a life estate in one-half, and as the other half belonged to the representatives of Skelton Taylor, as distributee of his son, the plaintiffs would be entitled to recover. The court refused so to charge, because, in the first place, the evidence did not, in the opinion of the court, raise the point. Secondly, because if there were a forfeiture by a sale under such circumstances the effect of such forfeiture in the first instance was not to displace the legal title which remained in the administrator of Abraham until distribution, and the action ought to have been in his name, and not in the name of the present plaintiffs. Thirdly, because the act did not create a forfeiture under such circumstances.
The defendant's counsel moved the court for instructions which were either refused or reserved, and which it is unnecessary to state, as the jury found a verdict for the defendants. A motion for a new trial was made on the part of the plaintiffs, because of misdirection in the charge and the refusal of the court to charge as requested by them. This motion was overruled and the plaintiffs appealed.
We are of opinion that the judgment must be affirmed, (276) because this action cannot be maintained by the plaintiffs, as executors of Skelton Taylor.
One of the facts disputed on the trial was whether the slaves had been given or loaned by Clackson, the father-in-law, to Abraham Taylor. The plaintiffs contended that they had been given absolutely, and upon that founded their claim of title in the following manner: They insisted that after the death of Abraham Taylor intestate the title became vested in their testator, Skelton Taylor, who became his administrator. The plaintiffs further insisted that by the sale by Abraham's widow of the slaves, with the intent that they should be removed out of Virginia, his life estate was under a statute of that State forfeited, and was now vested in the plaintiffs as the executors of Skelton Taylor, who was also the father of the intestate, Abraham Taylor, and as his next of kin entitled to one-half of his slaves in possession at his death, and to the other half in reversion after the death of his widow, or other sooner determination of her estate for life. This the plaintiffs insisted on as true, whether there had been a division of the estate left by Abraham Taylor between the father and widow, and upon such division the slaves afterwards sold to the defendants had been allotted to the latter for life in her share, or whether there had been no such division, but the slaves had been allowed *Page 220 
by the father and administrator to remain in possession of the widow undivided, but still subject to division.
Upon those propositions of the plaintiffs it was left to the jury whether there was a gift or a loan, and if the former whether there had been a division between the next of kin or not; and they were instructed that the plaintiffs were entitled to recover, if there had been such gift and division, but that they were not entitled to recover if there had not been an allotment of these slaves to the widow.
As the verdict was for the defendant it removes from our consideration the important affirmative instructions on behalf of the plaintiffs upon the effect of the laws of Virginia, common or statutory, and therefore upon none of those points is an opinion given. It also excludes from our notice the instructions prayed on the part of the (277) defendants, because they having been denied or reserved, could have had no influence in producing the verdict. The verdict makes the conclusion a necessary one, that the jury thought either that there was no gift, or that the negroes had never been allotted to the widow in her share of her husband's estate, but that the estate remained unsettled and subject to distribution. The court cannot see that the jury proceeded on the matter of fact first mentioned, and it may therefore be that they went on the ground that there had been no division, and that the legal consequence therefrom was that specified by the court.
The case is therefore reduced to the single point, whether the court properly refused the prayer of the plaintiffs for an instruction that they ought to recover, although there had been no division of the slaves of the intestate between his next of kin.
His Honor gave for his opinion several reasons, of which one seems to us so plain and decisive against the action that we do not embarrass ourselves with the others.
The plaintiffs declare in detinue, as the executors of the will of Skelton Taylor. In him, therefore, they must show the title that was once in Abraham Taylor by the gift of Clackson. It is not sufficient that Skelton was the administrator of Abraham, for upon the death of an administrator the goods of the intestate do not go to the executor of the administrator, but to the administrator de bonis non of the intestate. The plaintiffs must, therefore, show in their testator something better than a title as administrator merely. This was attempted by urging that as he was also father and next of kin it might be and was, upon the circumstances, to be inferred, that at his death he held in jure proprio, and not as administrator. But we think that an inadmissible inference, and indeed that it is completely repelled. Skelton Taylor was never, in fact, in the possession of the slaves, as appears by the evidence, and as is admitted in the prayer of the plaintiffs themselves. They were in the *Page 221 
possession of the widow, who was entitled to one-half in value, and in severalty for her life, as her distributive share. Now if to this be added the farther fact as found by the jury that there was no division and allotment between the parties entitled, it is clear that the estate had not been administered by Skelton Taylor, but that the important (278) parts of accounting and distribution yet remained to be performed by some person. Until distribution certainly the administration is incomplete, and must be committed to some person de bonis non. If the administrator here had not been next of kin there would have been a necessity, upon his death, for a further administration to settle and divide. It is equally necessary, although the administrator was, as next of kin, entitled to a share of the estate; for that right did not attach to any particular chattels. Prima facie the unsold and undivided specific goods were held by the administrator in his official character; and therefore his representatives do not succeed to them.
PER CURIAM. Judgment affirmed.
Cited: S. v. Johnston, 30 N.C. 382; S. v. Johnson, id., 399; S. v.Britton, 33 N.C. 112; Morton v. Ashbee, 46 N.C. 314; Duke v. Ferebee,52 N.C. 11; Latta v. Russ, 53 N.C. 113; Lansdell v. Winstead, 76 N.C. 369;Ham v. Kornegay, 85 N.C. 122.
(279)